**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRACH EDWARD NORRIS,
               *Petitioner-Appellant,*

v.

RICHARD MORGAN, Superintendent
of Washington State Penitentiary,
               *Respondent-Appellee.*

No. 08-35645

D.C. No.
2:05-cv-05045-FVS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Fred L. Van Sickle, District Judge, Presiding

Argued and Submitted
March 10, 2010—Seattle, Washington

Filed September 23, 2010

Before: Raymond C. Fisher and Marsha S. Berzon,
Circuit Judges, and G. Murray Snow, District Judge.*

Opinion by Judge Berzon

_____

*The Honorable G. Murray Snow, United States District Judge for the
District of Arizona, sitting by designation.

## COUNSEL

Matthew Campbell, Federal Defenders of Eastern Washington & Idaho, Spokane, Washington, for the appellant.

Robert McKenna, Attorney General, and Donna Mullen (argued), Assistant Attorney General, Washington Attorney General's Office, Olympia, Washington, for the appellee.

## OPINION

BERZON, Circuit Judge:

Brach E. Norris was convicted by a jury of child molestation in the first-degree. Norris had also had been convicted of child molestation ten years earlier. The State of Washington's "two strikes" law for repeat sex offenders provides for a mandatory sentence of life in prison without the possibility of parole, and Norris was so sentenced. Invoking the Eighth Amendment's prohibition against cruel and unusual punishment, Norris challenges his sentence as grossly disproportionate to his offense.

The Washington Court of Appeals denied Norris's claim, holding his life-without-parole sentence not grossly dispro-

portionate to his crime. On habeas review, we decide whether the Washington Court of Appeals's decision denying Norris's claim "was contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1). We conclude that the decision was not contrary to clearly established federal law. Additionally, while finding the issue a close one, we conclude that Norris's Eighth Amendment claim would fail even on *de novo* review, and thus need not determine whether the state appellate court decision involved an unreasonable application of clearly established federal law. We affirm.

## I.

### A.

In November 1993, Washington became the first State to enact a "three strikes" law. U.S. Dept. of Justice, National Institute of Justice, J. Clark, J. Austin, & D. Henry, "Three Strikes and You're Out": A Review of State Legislation 1 (Sept. 1997). Formally titled the Persistent Offender Accountability Act (POAA), Wash. Rev. Code § 9.94A.570 *et seq.*, the law amended Washington's sentencing scheme to require sentences of life imprisonment without the possibility of parole for defendants who are convicted of a felony defined as a "most serious offense" in Wash. Rev. Code. § 9.94A.030(31),[1] and have previously been convicted of at

---

[1]A "most serious offense" includes "(a) Any felony defined under any law as a class A felony or criminal solicitation of or criminal conspiracy to commit a class A felony; (b) Assault in the second degree; (c) Assault of a child in the second degree; (d) Child molestation in the second degree; (e) Controlled substance homicide; (f) Extortion in the first degree; (g) Incest when committed against a child under age fourteen; (h) Indecent liberties; (i) Kidnaping in the second degree; (j) Leading organized crime; (k) Manslaughter in the first degree; (l) Manslaughter in the second degree; (m) Promoting prostitution in the first degree; (n) Rape in the third degree; (o) Robbery in the second degree; (p) Sexual exploitation; . . . [and] (s) Any other class B felony offense with a finding of sexual motivation[.]" Wash. Rev. Code. § 9.94A.030(31).

least two such offenses on separate occasions. *See id.* at §§ 9.94A.570, 9.94A.030(36). By "provid[ing] a mandatory sentence based on the seriousness of the crime and a predetermined number of prior convictions," *State v. Thorne*, 921 P.2d 514, 528 (Wash. 1996), the law was designed to deter repeat offenders who commit at least three most serious offenses and "segregat[e] . . . [them] from the rest of society," *id.* at 532.

In 1996, the Washington Legislature passed a "two strikes" amendment to the POAA. *See State v. Morin*, 995 P.2d 113, 115 (Wash. App. 2000). Under this amendment, defendants who are convicted of certain sex offenses,[2] and have previously been convicted of at least one such offense, are classified as persistent offenders and sentenced to life imprisonment without parole. Wash. Rev. Code §§ 9.94A.570, 9.94A.030(36)(b)(ii).[3] The two strikes law's purposes are the same as that of the three strikes' statute:

---

[2]Sex offenses that are strikes under the two strikes law include first-degree child molestation, indecent liberties with forcible compulsion, rape, statutory rape, and certain crimes committed with a sexual motivation. *See* Wash. Rev. Code § 9.94A.030(36)(b)(i). These offenses are also defined as "most serious offenses" in § 9.94A.030(31).

[3]Washington sex offenders are otherwise subject to Washington's "determinate-plus" sentencing scheme, which provides for minimum terms of imprisonment and maximum sentences of life imprisonment with parole for class A felonies, 10 years for class B felonies, and five years for class C felonies. Wash. Rev. Code §§ 9.94A.505; 9.94A.507; 9.94A.510; 9.94A.515; 9.94A.728; *see State v. Brundage*, 107 P.3d 742, 746-47 (Wash. App. 2005) (applying a previous version of Wash. Rev. Code § 9.94A.507). Washington also has a "special sex offender sentencing alternative" available to certain sex offenders. *See* Wash. Rev. Code § 9.94A.670. Additionally, sex offenders convicted of a crime of sexual violence and determined to have a mental abnormality or personality disorder that makes the offender likely to engage in predatory acts of sexual violence after their term of imprisonment are subject to civil commitment after the completion of their sentences. Wash. Rev. Code § 71.09.010 *et seq.*; *see In re Detention of Thorell*, 72 P.3d 708, 714 n. 2, 719 (Wash. 2003).

incapacitation and deterrence of repeat offenders. *See Morin*, 995 P.2d at 117.

**B.**

At approximately 2:00 p.m. on March 5, 2001, Mark Hyndman and three of his four children, including his stepdaughter, C.D., then five years old, went to a McDonald's restaurant in Spokane, Washington, for a late lunch. After they finished eating, Hyndman's children went to play in an enclosed playroom inside the restaurant. As he sat outside the playroom and watched his children play, Hyndman noticed Norris, then 42-years old, sitting alone inside the playroom and making facial expressions at Hyndman's children while they threw balls against netting on the structure in the playroom. He also saw Norris get up and walk back and forth inside the playroom a few times, repeatedly looking up into the tubes on the structure on which some of the children were playing. Hyndman eventually went into the playroom and sat down so he could watch his children more closely.

Norris approached Hyndman and began talking to him. Hyndman, smelling alcohol on Norris's breath, moved away slightly and continued to watch his children. Hyndman's children were in different areas of the playroom at this time—the youngest was playing with some balls, and the others were playing on the slide next to Norris.

At some point, Hyndman, who had been watching his youngest child play with the balls, turned around and saw Norris bend, reach down with one hand, and touch C.D., who had just come down the slide, between the legs. Hyndman immediately grabbed Norris by the shirt and shoved him against a wall inside the playroom. He then shoved Norris outside the playroom, through the McDonald's lobby, and outside the restaurant, yelling to the McDonald's employees to call the police and that Norris had just inappropriately touched his daughter. Once outside, Norris broke free from

Hyndman's grasp and ran away, but Hyndman pursued him on foot. Norris eventually ducked behind an air conditioning unit adjacent to a nearby building, but three police officers arrived soon thereafter and took him into custody.

A few days later, Washington charged Norris with one count of child molestation in the first-degree in violation of Revised Code of Washington § 9A.44.083(1). At trial, Hyndman testified that he saw Norris "reach[ ] down to fondle [C.D.]" as she was trying to pull herself off the edge of the slide, touching her genitalia over her clothing and moving his fingers between her legs. Hyndman stated that the touch occurred "very quickly"—a couple of seconds at most—and in "a real sweeping quick motion," after which Norris "stood right up as if nothing had ever happened." C.D. also testified at trial, stating that while she was playing on the slide at the McDonald's a man touched her on her "privates," "[t]he front one." She also stated that the man had "wiggled" his hand and that she felt his fingers. C.D. could not identify Norris as the man who touched her but indicated that the man who touched her was the same person Hyndman had fought with at the McDonald's. On cross-examination, C.D. testified that the man had not hurt her.

Norris testified in his own defense. He offered an innocent explanation for his conduct, stating that while he was talking to Hyndman he heard a noise, turned to see C.D. on the edge of the slide, and instinctively grabbed her ankle and then placed his hand further up her body—he could not remember exactly where—to steady her, believing that she was going to fall. Norris also testified that he had just gotten off work, drunk two beers, and stopped at the McDonald's to pass the time until his bus came.

At the end of the trial, the trial judge instructed the jury that "[a] person commits the crime of child molestation in the first-degree [in violation of Wash. Rev. Code § 9A.44.083(1)] when he or she has sexual contact with a person who is less

than 12 years old . . . ," where "sexual contact" is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party or a third party." The jury convicted Norris of first-degree child molestation.

Before the sentencing hearing, Norris, who had previously been convicted of first-degree child molestation in 1991,[4] filed a motion challenging the application of Washington's two strikes law to his present conviction as cruel and unusual punishment under the federal Constitution's Eighth Amendment. Addressing *Andrade v. Attorney General of the State of California*, 270 F.3d 743 (9th Cir. 2001), *rev'd on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003), the trial court noted that "the [Eighth] Amendment does not require strict proportionality between the crime and sentence, but rather it forbids . . . extreme sentences that are grossly disproportionate to the crime . . . ." The court then applied a four-factor test adopted by the Washington Supreme Court in *State v. Fain*, 617 P.2d 720 (Wash. 1980), taking into account (1) the nature of the crime, (2) the legislative purpose behind the sentencing scheme; (3) the sentence Norris would receive for the same crime in other jurisdictions; and (4) the sentence Norris would receive for similar crimes in Washington.[5]

---

[4]Norris was also convicted of second-degree theft in 1999 and armed robbery in 1976. Second-degree theft and armed robbery are not predicate crimes under the Washington two-strike sexual offense amendment to the Washington POAA.

[5]The Washington proportionality analysis explicated in *Fain* was adopted from the Fourth Circuit's proportionality analysis in *Hart v. Coiner*, 483 F.2d 136, 140-43 (4th Cir. 1973), *overruling recognized by Hutto*, 454 U.S. at 373. *See Fain*, 617 P.2d at 726. In *Fain*, the Washington Supreme Court declined, however, to incorporate wholesale Hart's "legislative purpose" factor into its analysis. *See id.* at 728 n.7 (noting that the legislative purpose factor "should be employed with caution" and declining to "venture a conclusion . . . . that a given sentence more nearly accomplishes the legislative purpose"). In a later opinion on the constitutionality of a sentence under Washington's three strikes law, the state

The trial court first applied the *Fain* factors to repeat first-degree child molesters in the abstract and concluded that, "in general[,] as far as an objective look at the sentencing scheme for this case[,] . . . application of [the] two strikes law is not cruel and unusual punishment under the [Eighth Amendment]." The trial court next considered whether application of the two strikes law to Norris's specific offense constituted cruel and unusual punishment. The court explained:

> I think the question becomes . . . is this a child molestation in the first degree [that] is classified as a violent crime and the answer is yes[;] all the elements of child molestation in the first degree were demonstrated beyond a reasonable doubt, and the jury made a finding of guilty in this case.

> Unlike the *Andrade* case where we started out from the get-go with a nonserious, nonviolent, nonthreatening charge of shoplifting or theft, we don't start out on that level in this case. We start out with exactly the type of crime that the . . . two strikes law is intending to prevent.

---

Supreme Court seemingly abandoned the "legislative purpose" factor: "The court considers *three* factors in determining whether a punishment is disproportionate to the crime committed and thus 'cruel' in contravention of [the state constitution]: (1) the nature of the offense; (2) the punishment the defendant would have received in other jurisdictions for the same offense; and (3) the punishment imposed for other offenses in the same jurisdiction." *State v. Manussier*, 921 P.2d 473, 485 (Wash. 1996) (emphasis added) (citing *Fain*, 617 P.2d at 720). In two companion cases, however, the state Supreme Court stated that "*Fain* enunciated a *four*-factor test to be considered in analyzing claims of cruel punishment," and proceeded to address the legislative history of the three strikes law in its analysis. *Thorne*, 921 P.2d at 531, 532 (emphasis added); *see State v. Rivers*, 921 P.2d 495, 502, 503 (Wash. 1996). The state Supreme Court has since recognized but not addressed the legislative purpose factor, *State v. Magers*, 189 P.3d 126, 137 & n.3 (Wash. 2008), and stated that the factor is to be "applied with caution," *State v. Korum*, 141 P.3d 13, 27-28 (Wash. 2006).

Secondly, not only do we have a prior conviction for [ ] Norris, it happens to be a prior conviction of exactly the same offense, child molestation . . . in the first degree. . . . That matter also involved a young[ ] . . . female child as this matter did.

One of the major thrusts of the [POAA] is to prevent recidivism. This is a repeat offense. It has many of the earmarks of the prior offense as best I can determine from what I reviewed in the [presentence report].[6]

[A]nother issue I find disturbing in this particular case is this case took place in an open, very public area. There was another adult nearby. It indicates to me a complete lack of impulse control on [ ] Norris'[s] part and . . . risk[-]taking in a public place; in other words, the risk that [Norris is] going to be caught causes me concern about his behavior and the kind of behavior that the two strikes law is intend-[ed] to prevent, [*e.g.*,] repeat behavior.

. . . .

. . . . This is not a shoplifting case. This is a case of a commission of an offense that is specifically prohibited by a very tailored, limited two strikes law to sex offenders.

The trial court concluded that "the application of the [POAA] for two strikes [to Norris's most recent child molestation con-

---

[6]There is nothing in the record describing the offense conduct underlying Norris's 1991 child molestation conviction except for a single statement made by the state prosecutor at the sentencing hearing: "[T]he [1991 child molestation conviction,] had [Norris] been convicted on the facts presented[,] would have been a child rape. It appears that according to plea negotiations it was pled down to . . . child molest[ation]."

viction] did not violate the [Eighth Amendment]," and sentenced Norris to a term of life imprisonment without the possibility of parole.

On direct review, the Washington Court of Appeals affirmed in an unpublished opinion. Relying on *State v. Thorne*, 921 P.2d 514 (Wash. 1996), the court reviewed Norris's sentence under the Washington Constitution[7] rather than under the Eighth Amendment, stating that "the Washington Constitution['s] [bar against cruel punishment] is more protective than the Eighth Amendment," and thus "if [a] sentence passes scrutiny under the state provision, [the court] need not address the federal constitution." The state appellate court then applied the four *Fain* factors "[t]o determine [whether Norris's] sentence of life in prison without the possibility of parole under the POAA [was] grossly disproportionate" to his crime.

Addressing the first *Fain* factor, the Washington Court of Appeals concluded that Norris had "committed a most serious, violent, sex offense against a child." It acknowledged Norris's "argu[ment] that the touch was 'de minimis,' and was 'a brief one-second touch over clothing' that did not involve violence" but rejected it, reasoning that "the [Washington] Legislature has classified first degree molestation as a 'most serious,' 'violent,' 'sex offense,' " and "Norris . . . was convicted of first degree child molestation." Turning to the second factor, the court stated that the legislative purpose behind the two strikes law was two-fold: "to provide mandatory sentences for repeat offenders to deter such crimes and to protect society." And, as Norris "had previously committed the same crime," "violated the conditions of his parole by interacting with young children, without required supervision," and "now . . . molested another young girl, in a public

---

[7]Article I, Section 14 of Washington's Constitution provides that "Excessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted."

place, with her stepfather close by, watching him and the children," the court held that "Norris's sentence [was] consistent with the purposes of the [two strikes law]." Additionally, the Washington Court of Appeals held that Norris's sentence was comparable to the sentence he would have received for committing similar crimes in the State—the fourth *Fain* factor—because "[s]everal other similar offenses, such as first or second degree rape and first or second degree rape of a child[,] would similarly qualify an offender for life in prison if the offender had a prior first degree molestation conviction."[8]

In examining other jurisdictions' sentencing schemes under the third *Fain* factor, the Washington Court of Appeals did note that "[m]ost states that have 'two strikes' laws require sex offenses with some degree of penetration and infliction of serious bodily harm." In addition, according to the state appellate court, only "[a] small[ ] number of states would impose a sentence of life in prison without parole for a second offense after a similar prior offense. For example, Georgia, Montana, New Mexico, South Carolina, and Wisconsin all have two strikes laws for some types of sexual offenses." Nonetheless, citing *State v. Gimarelli*, 20 P.3d 430, 436 (Wash. App. 2001), for the proposition that no one factor is dispositive in the *Fain* analysis, the court concluded that the third factor was "not dispositive" in this case.

The Washington Court of Appeals also drew a distinction between property crimes and crimes against persons:

> This violent sex offense against a child is quite different from [a] nonviolent property crime . . . . The Legislature has a right to discourage such behavior and protect the public from such offenders.

---

[8]The Washington Court of Appeals rejected as an improper inquiry Norris's contention that he would have received a significantly shorter sentence if the two strikes law did not exist.

In this case, Mr. Norris is a repeat child molester. He showed a lack of impulse control in molesting a five-year-old girl under the watchful eye of her father. Molesting a child is considered a violent sexual offense.

Based on this analysis, the Washington Court of Appeals concluded that Norris's life-without-parole sentence was not grossly disproportionate to his crime. The Washington Supreme Court denied discretionary review, without comment.

Norris filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the Eastern District of Washington. Applying federal law, the district court concluded that Norris's life-without-parole sentence did not violate the Eighth Amendment:

> While life imprisonment without the possibility of parole is indeed a harsh sentence, . . . it is not grossly disproportionate to the crime of which [Norris] was convicted. . . . [M]olesting a child is necessarily a 'most serious offense.' The victims of child molestation suffer incalculable harm. The gravity of the offense is intensified in this case by the fact that the victim was only five-years-old at the time of the incident and the offense occurred while her parents were, essentially, in the same room. Thus, 'a threshold comparison of the crime committed and the sentence imposed' does not lead to an inference of gross disproportionality [under the Eighth Amendment].

The district court also concluded that the Washington standard as applied by the Washington courts was not contrary to or an unreasonable application of Supreme Court Eighth Amendment caselaw:

> . . . . The ultimate question under both federal and state law is the same: is [Norris's] sentence grossly

disproportionate to this crime? The *Fain* factors mirror the considerations articulated by the Ninth Circuit . . . : both require consideration of the nature of the crime and both permit comparison of the sentences imposed for similar crimes in various jurisdictions. . . . It follows that, if [Norris's] sentence passed muster under the Washington test, it must necessarily be proportionate for purposes of the Eighth Amendment as well.

. . . .

Having reviewed the record and the opinion of the [state appellate court], th[is] Court concludes that the [state court] did not apply the law concerning gross disproportionality in an objectively unreasonable manner. The [state court] reached the same conclusion that this Court reached in applying Ninth Circuit law.

After rejecting Norris's other claims, the district court denied his habeas petition.

Norris timely filed a notice of appeal and applied for a certificate of appealability. We certified one issue for appeal: "whether appellant's sentence of life in prison without the possibility of parole violates the Eighth Amendment's bar against cruel and unusual punishment."[9] We also ordered appointment of counsel for Norris on appeal.

---

[9]Norris raises three uncertified issues in his opening brief and requests that the court expand the Certificate of Appealability (COA) to include them. *See* 9th Cir. R. 22-1(e). Because Norris concedes that these issues were not presented to the district court, we may not consider them on appeal, and so deny the request to certify them. *See Smith v. Richards*, 569 F.3d 991, 995 (9th Cir. 2009); *Morgan v. Bunnell*, 24 F.3d 49, 52 (9th Cir. 1994).

## II.

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214. Under AEDPA, a federal habeas court may grant a habeas petition if, *inter alia*, the state court's adjudication of the merits of the petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). If § 2254(d)(1) is satisfied, "then federal habeas courts must review the substantive constitutionality of the state custody de novo." *Frantz v. Hazey*, 533 F.3d 724, 737 (9th Cir. 2008) (en banc).

### A.

We begin by determining the relevant Supreme Court authority clearly established at the time the relevant state court decision became final. *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *see Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004). The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions." *Williams*, 529 U.S. at 412. "When more than one state court has adjudicated a claim, we analyze the last reasoned decision." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005); *see also Frantz*, 533 F.3d at 733-34. In this case, the last reasoned state court decision is the Washington Court of Appeals's unpublished opinion denying Norris's claim on the merits.

**[1]** The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The last clause "prohibits not only barbaric punishments," *Solem v. Helm*, 463 U.S. 277, 284 (1983), but any "extreme sentence[ ] that [is] 'grossly disproportionate' to the crime."[10]

---

[10]The Supreme Court has held that some sentences are so disproportionate to certain crimes or certain crimes committed by certain classes of

*Ewing v. California*, 538 U.S. 11, 23 (2003) (plurality opinion) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment)). This "narrow proportionality principle . . . applies to noncapital sentences." *Id.* (internal quotation marks omitted).

Relying on *Solem*, Norris argues that the Supreme Court has clearly established a three-factor approach for determining whether a noncapital sentence for a term of years is grossly disproportionate to the crime committed. In *Solem*, the Court

> announced three objective factors to guide review of a sentence for a term of years under the Eighth Amendment. First, a reviewing court must look to the gravity of the offense and the harshness of the penalty. . . . Second, 'it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction.' . . . Finally, . . . 'courts may find it useful to compare 'the sentences imposed for [the] commission of the same crime in other jurisdictions.'

*Gonzalez v. Duncan*, 551 F.3d 875, 880 (9th Cir. 2008) (quoting *Solem*, 463 U.S. at 290-91). This approach was short-lived, however. Eight years later in *Harmelin*, there was no agreement by a majority of the Supreme Court on how to apply the proportionality principle. *Compare Harmelin*, 501 U.S. at 994-95 (confining proportionality review to capital

---

offenders that they are categorically barred by the Eighth Amendment's prohibition against cruel and unusual punishment. *See Graham v. Florida*, 130 S. Ct. 2011 (2010) (life-without-parole sentences for non-homicide crimes by juveniles); *Kennedy v. Louisiana,* 128 S. Ct. 2641 (2008) (capital sentences for nonhomicide crimes); *Roper v. Simmons*, 543 U.S. 551 (2005) (capital sentences for juvenile offenders); *Atkins v. Virginia*, 536 U.S. 304 (2002) (capital sentences for offenders whose intellectual functioning is in a low range).

cases) (opinion of Scalia, J.) *with id.* at 1004-05 (opinion of Kennedy, J.) (embracing proportionality review for noncapital cases but eschewing inter- and intrajurisdictional analyses in most cases) *and id.* at 1009 (White, J., dissenting) (preferring to include inter- and intrajurisdictional analyses in all proportionality reviews). Later, in *Ewing*, there was again no agreement on the proper approach to proportionality review. *Compare Ewing*, 538 U.S. at 23-24 (plurality opinion) (applying the approach adopted in Justice Kennedy's *Harmelin* concurrence[11]) *with id.* at 31 (Scalia, J., concurring in the judgment) (rejecting outright the proportionality principle) *and id.* at 32 (Thomas, J., concurring in the judgment) (same).

**[2]** Reflecting this disarray, the Supreme Court held, the same day *Ewing* was decided, that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' [AEDPA] framework is the gross disproportionality principle, the precise contours of which are unclear and which is applicable only in the 'exceedingly rare' and 'extreme' case." *Andrade*, 538 U.S. at 72 (quoting *Harmelin*, 501 U.S. at 1001 (opinion of Kennedy, J.)).[12] *Ewing* and

---

[11]Justice Kennedy took the view in his *Harmelin* concurrence that a court needs to address the second and third *Solem* factors—the intrajurisdictional and interjurisdictional analyses—only if it concludes that there is "an inference of gross disproportionality" after addressing the first *Solem* factor. *Harmelin*, 501 U.S. at 1005 ("[I]ntrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.") (opinion of Kennedy, J.) .

[12]The Supreme Court has since settled on an authoritative answer to how reviewing courts should apply the proportionality principle to noncapital sentences, adopting the three-factor approach established by Justice Kennedy in his *Harmelin* concurrence:

A court *must* begin by comparing the gravity of the offense and the severity of the sentence. '[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sen-

*Andrade* were the last pertinent Supreme Court Eighth Amendment opinions before the state appellate court decision denying relief to Norris became final, so *Andrade*'s statement about what federal law was clearly established controls our analysis here.

The gross disproportionality principle necessarily has a core of clearly established meaning; a principle with no substance is no principle at all. The meaning of a principle may "emerge in application over the course of time," *Yarborough*, 541 U.S. at 664, and "even a general standard may be applied in an unreasonable manner." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007); *see, e.g.*, *Musladin v. Lamarque*, 555 F.3d 830, 839 (9th Cir. 2009) ("AEDPA's 'clearly established Federal law' requirement does not demand more than a 'principle' or 'general standard' in the Supreme Court's caselaw before habeas relief can be granted.") (quoting *Panetti*, 551 U.S. at 953); *Moses v. Payne*, 555 F.3d 742, 760 (9th Cir. 2009).

**[3]** There was indeed some elucidation of the gross disproportionality principle available to the state courts when they decided this case. First, the Supreme Court has uniformly applied—and thus given meaning to—the gross disproportionality principle by consistently measuring the relationship between the severity of the punishment inflicted upon the offender and the nature and number of offenses committed, even though it has sometimes used different frameworks to conduct this analysis. *See Ewing*, 538 U.S. at 28-29 (plurality opinion); *Andrade*, 538 U.S. at 72; *Harmelin*, 501 U.S. at

---

tence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.

*Graham*, 130 S. Ct. at 2022 (emphasis added) (quoting *Harmelin*, 401 U.S. at 1005 (opinion of Kennedy, J.)); *see also id.* at 2037-38 (Roberts, C.J., concurring in the judgment).

1005 (opinion of Kennedy, J.); *Solem*, 463 U.S. at 290-91; *Rummel v. Estelle*, 445 U.S. 263, 274-76 (1980). Second, the Supreme Court has repeatedly stated that a court's proportionality analysis " 'should be informed by objective factors to the maximum possible extent' " instead of relying on " 'subjective views' " regarding the fit between the offenses and the punishment. *Rummel*, 445 U.S. at 274 (quoting *Coker v. Georgia*, 433 U.S. 587, 592 (1977)); *see Harmelin*, 401 U.S. at 998-1001 (opinion of Kennedy, J.); *Solem*, 463 U.S. at 290. Accordingly, at the very least, it was clearly established at the time the state court decision in this case became final that in applying gross disproportionality principle courts must objectively measure the severity of a defendant's sentence in light of the crimes he committed.

## B.

We turn now to the case before us and ask if the state court adjudication of Norris's claim was "contrary to, or involved an unreasonable application of" the proportionality principle when it concluded that Norris's sentence was not grossly disproportionate to his crime under Washington's two strikes law. *See* 28 U.S.C. § 2254(d)(1).

## 1.

The Washington Court of Appeals did not address Norris's Eighth Amendment claim as such. Rather, it analyzed his claim under the Washington Constitution, relying on *Thorne*, 921 P.2d at 531-32, for the propositions that the state Constitution's bar against "cruel punishment" is more protective than the federal Constitution's bar against "cruel *and unusual* punishment," and therefore, if a defendant's sentence does not violate the Washington Constitution, a state court need not address the defendant's claim under the Eighth Amendment. The Washington Court of Appeals then proceeded to apply to Norris's claim a gross disproportionality analysis adopted by the Washington Supreme Court in *Fain*, 617 P.2d at 725-26.

**[4]** The State argues that the state courts' reliance on the *Fain* factors cannot be contrary to clearly established Supreme Court caselaw because the Supreme Court has not ruled on the question whether a sentence of life without the possibility of parole for a repeat sex offender violates the Eighth Amendment's bar against cruel and unusual punishment. This contention—that there is no clearly established Supreme Court law unless the Supreme Court has addressed the precise circumstances presented to us in a federal habeas petition—has been repeatedly rejected. *See Panetti*, 551 U.S. at 953 ("AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced."); *see also Musladin*, 555 F.3d at 830. Rather, a state court's decision is "contrary to" clearly established law if it either (1) "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision and nevertheless arrives at a [different] result," *or* (2) "*applies a rule* that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405-06 (emphasis added); *see also Frantz*, 533 F.3d at 734. Therefore, while "[a]voiding [a 'contrary to' error] does not require citation . . . [or] awareness of [Supreme Court] cases," *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam), a state court's "use of the wrong legal rule or framework . . . do[es] constitute error under the 'contrary to' prong of § 2254(d)(1)." *Frantz*, 533 F.3d at 734.

**[5]** Norris argues that the Washington Court of Appeals's failure to address the *Solem* factors and use of the *Fain* factors *exclusively* was contrary to clearly established Supreme Court caselaw. As previously discussed, however, the Supreme Court, shortly before the Washington Court of Appeals's decision became final, made clear in *Andrade* that the only relevant clearly established law for purposes of § 2254(d)(1) in an Eighth Amendment challenge such as this one was the

gross disproportionality principle, and stressed that its "precise contours" were "unclear." 538 U.S. at 73; *see Nunes v. Ramirez-Palmer*, 485 F.3d 432, 439 (9th Cir. 2007). The Court went on to hold in *Andrade* that a state court's failure to address specifically *Solem* (or *Harmelin*) did not result in a decision " 'contrary to' the governing legal principles set forth in [Supreme Court] cases." *Andrade*, 538 U.S. at 73-74. Additionally, *Ewing* did not significantly change the landscape, as no majority of the Supreme Court agreed on a particular approach for applying the Eighth Amendment proportionality principle. We thus cannot conclude that the Washington Court of Appeals's failure to address specifically the *Solem* factors was contrary to a clearly established legal principle or framework at the time of its decision.[13]

### 2.

**[6]** In the alternative, Norris argues that the Washington Court of Appeals's use of the *Fain* factors was an unreasonable application of the proportionality principle to the facts of this case. "A state court's decision is an unreasonable application of clearly established federal law if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.' " *Rios v. Garcia*, 390 F.3d 1082, 1084 (9th Cir. 2004) (quoting *Williams*, 529 U.S. at 413); *see also Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (holding that a state court's application of clearly established federal law must be "objectively unreasonable," not just "erroneous" or "incorrect").

Applying the proportionality analysis developed in *Fain* and its progeny, the Washington Court of Appeals held Norris's life-without-parole sentence not grossly disproportionate

---

[13]We repeat that the approach in Justice Kennedy's *Harmelin* concurrence was recently adopted by a majority of the Supreme Court. *See Graham*, 130 S. Ct. at 2022.

to his crime because the nature of his crime, first-degree child molestation, is defined by Washington statute as a "violent" and "most serious" offense; his sentence served the legislative purposes behind the two strikes law of incapacitation and deterrence for recidivist sex offenders; and he would have received the same sentence under the two strikes law for committing similar crimes.[14]

---

[14]The Washington Court of Appeals also conducted an interjurisdictional analysis—the third *Fain* factor—concluding that while five other states—Georgia, Montana, New Mexico, South Carolina, and Wisconsin—have two strikes laws, and only a "small number" of states would have imposed a life-without-parole sentence for a second similar prior offense "for some types of sexual offenses," this factor was not dispositive. As Norris correctly points out on appeal, there were at that time actually eight other states—California, Connecticut, Georgia, Missouri, Montana, New Mexico, South Carolina, and Wisconsin—that had two strikes laws, three of which—California, Connecticut, and New Mexico—would have imposed life-*with*-parole sentences rather than life-*without*-parole sentences for second-strike offenses. *See* California Penal Code § 667.71; C.G.S.A. § 53a-40; O.C.G.A. § 17-10-7(b)(2); V.A.M.S. § 558.018; M.C.A. § 46-18-219(1)(a); N.M.S.A. § 31-18-25; S.C. Stat. § 17-25-45(a); Wis. Stat. § 939.62. Additionally, only Wisconsin might have imposed a life-without-parole sentence based on the facts of this case. *See* Wis. Stat. §§ 939.62(2m)(a) (defining "serious child sex offense" as including "sexual assault of a child"), 948.02 (defining "sexual assault" to include "sexual contact"), 948.01(5)(a) (defining "sexual contact" as "intentional touching, whether direct or through clothing, if that intentional touching is . . . for the purpose of . . . sexually arousing or gratifying the defendant"). Based on these errors, Norris contends that the Washington Court of Appeals's interjurisdictional analysis was an unreasonable application of clearly established Supreme Court law.

To be sure, although the Supreme Court did not require an interjurisdictional analysis at the time of the Washington Court of Appeals's decision, the court was still bound reasonably to apply any subanalyses it used toward the end of applying the Eighth Amendment gross disproportionality principle. Nonetheless, any error in the Washington Court of Appeals's interjurisdictional analysis does not amount to an unreasonable application of the gross disproportionality principle in this case. If anything the Washington Court of Appeals appears to have understated the most relevant support for Norris's sentence in its analysis by failing to note that one other state, Wisconsin, probably would have imposed the same sentence based on the same facts.

**[7]** Although each of these analyses was permissible and relevant to an Eighth Amendment proportionality analysis, the Washington Court of Appeals did not separately grapple in the course of its analysis with the ultimate comparison of the severity of Norris's sentence of life imprisonment without the possibility of parole—"the second most severe penalty permitted by law," *Harmelin*, 501 U.S. at 1001 (opinion of Kennedy, J.), and one that "alters the offender's life by a forfeiture that is irrevocable," *Graham*, 130 S. Ct. at 2027—and the nature and number of his offenses. The state court did, however, ultimately conclude that, "[b]ased upon [the *Fain*] factors, Mr. Norris's sentence is not grossly disproportionate to his crime. He is a convicted child molester, who repeatedly has improperly touched children." These remarks, and the recitation earlier in the state court's opinion of Norris's life-without-parole sentence, sufficiently establish that the Washington Court of Appeals considered Norris's sentence. *See Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam) (rejecting the contention that the state court " 'failed to consider' facts and circumstances that it had taken the trouble to recite"). It is unclear, however, whether those remarks similarly establish that the court *weighed* the severity of Norris's life-without-parole sentence against the nature and number of his crimes.[15] Nonetheless, because we conclude that Norris's Eighth Amendment claim fails even if it were eligible for *de novo* review, we need not decide whether it is the "fair import of the [state] Court of Appeal's opinion," *id.*, that the court per-

---

[15]The issue here is not whether "the [Washington] Court of Appeal[s] . . . g[a]ve certain facts and circumstances *adequate* weight (and hence adequate discussion)," *Early*, 537 U.S. at 9 (emphasis added), but whether the court in fact weighed at all the severity of Norris's sentence of life in prison without the possibility of parole, against the nature and number of Norris's specific crimes, and therefore whether the state court conducted the requisite comparative analysis. Similarly, we do not suggest that this analysis "demand[s] a formulary statement" that the punishment at issue is "severe." *Id.* It does demand, however, an individualized comparison of the severity of the defendant's specific sentence and the nature and number of the defendant's specific crimes. *See Graham*, 130 S. Ct. at 2022.

formed the clearly established objective comparison between Norris's sentence and crimes, and therefore whether the state court's decision was objectively reasonable. *Cf. Frantz*, 533 F.3d at 735-37 (holding that a federal habeas court must review *de novo* the constitutional issues raised if a state court decision is unreasonable under AEDPA, and may do so before performing the § 2254(d)(1) analysis).

## C.

**[8]** In considering *de novo* Norris's Eighth Amendment gross disproportionality claim, we begin by determining whether "the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005 (opinion of Kennedy, J.); *see Graham*, 130 S. Ct. at 2022. In doing so, we compare the harshness of the penalty imposed upon the defendant with the gravity of his triggering offense and criminal history. *Ewing*, 538 U.S. at 28-29 (plurality opinion); *accord Ramirez*, 365 F.3d at 767-70. This analysis can consider the penological justifications for the State's sentencing scheme, *Graham*, 130 S. Ct. at 2028, "[the offender's] mental state and motive in committing the crime, [and] the actual harm caused to his victim or to society by his conduct," *id.* at 2037 (opinion of Roberts, C.J.) (citing *Solem*, 463 U.S. at 292-94), as well as "[t]he absolute magnitude of the crime," *Solem*, 463 U.S. at 293; *accord Taylor v. Lewis*, 460 F.3d 1093, 1098 (9th Cir. 2006).

**[9]** With respect to the harshness of his sentence, Norris argues that a sentence of life imprisonment without the possibility of parole is extremely harsh, and the State so concedes, as it must. "[L]ife without parole is 'the second most severe penalty permitted by law.' " *Graham*, 130 S. Ct. at 2027 (quoting *Harmelin*, 501 U.S. at 1001 (opinion of Kennedy, J.)); *cf. Ramirez*, 365 F.3d at 767 (holding that a sentence of 25 years to life with the possibility of parole is "harsh . . . beyond any dispute"). It "share[s] some characteristics with death sentences that are shared by no other sentences," and

"deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency —the remote possibility of which does not mitigate the harshness of the sentence."[16] *Graham*, 130 S. Ct. at 2027. Although the offender's life is spared, he is condemned to die in "a living tomb, there to linger out what may be a long life . . . without any of its alleviation or rewards—debarred from all pleasant sights and sounds, and cut off from all earthly hope." John Stuart Mill, *Parliamentary Debate on Capital Punishment Within Prisons Bill* (April 21, 1868), reprinted in Philosophical Perspectives on Punishment 271 (Gertrude Ezorksy ed. 1972); *see Graham*, 130 S. Ct. at 2027.

A life sentence is obviously more severe without parole than with it. *See Solem*, 463 U.S. at 297. In Washington, only one crime—first-degree aggravated murder, Wash. Rev. Code § 10.95.020—is punishable by life imprisonment without the possibility of parole for a first offense. *See* Wash. Rev. Code §§ 9.94A.510, 9.94A.515. Life without parole is otherwise reserved for criminals sentenced under Washington's two or three strikes laws. The Supreme Court has applied the Eighth Amendment proportionality principle to life-without-parole sentences for non-homicide crimes just three times, reaching different results. *See Graham*, 130 S. Ct. at 2034 (holding that life-without-parole sentences for juveniles offenders who did not commit homicide are categorically barred by the Eighth Amendment); *Harmelin*, 501 U.S. 995 (holding that a life-without-parole sentence was not grossly disproportionate to a felony offense of possession of 672 grams of cocaine for a first-time offender); *Solem*, 463 U.S. at 278 (holding that a life-without-parole sentence was grossly disproportionate to a

---

[16]The Governor of the State of Washington may pardon or grant clemency to a defendant sentenced under the POAA, but the Legislature has "recommend[ed] that any offender subject to [the POAA]] not be considered for release until the offender has reached the age of at least sixty years old and has been judged to be no longer a threat to society." Wash. Rev. Code § 9.94A.565. It has also "recommend[ed] that sex offenders be held to the utmost scrutiny . . . regardless of age." *Id.*

minor felony offense of uttering a $100 "no account" check for an offender with a criminal history of several nonviolent felonies).[17]

**[10]** The question therefore is whether Norris's harsh sentence of life imprisonment without the possibility of parole is justified by the gravity of his most recent offense and criminal history. Although the issue is close, we hold that it is.

In evaluating the gravity of Norris's most recent offense, the State of Washington, like the state courts in this case, relies heavily on the fact that Norris's offense, first-degree child molestation, is defined by state statute as a "most serious," Wash. Rev. Code § 9.94A.030(31)(a), and "violent" offense, *id.* at § 9.94A.030(53)(a)(i). *See id.* at § 9A.44.083(2). We recognize that the statutory classification of crimes, like "the fixing of prison terms for [those] crimes[,] involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts.' " *Harmelin*, 501 U.S. at 998 (opinion of Kennedy, J.) (quoting *Rummel*, 445 U.S. at 275-76); *see also Hutto v. Davis*, 454 U.S. 370, 373 (1982) (per curiam). Nonetheless, in Eighth Amendment cases, "courts traditionally have [also] made these judgments—just as legislatures must make them in the first instance," as they are "competent to judge the gravity of an offense, at least on a relative scale."[18] *Solem*, 463

---

[17]We are not aware of any case in which our court has applied the Eighth Amendment proportionality principle to a life-without-parole sentence for a non-homicide crime.

[18]Though "[r]eviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes," *Solem*, 463 U.S. at 290, such deference is not absolute. Otherwise, a legislature's determination to classify even the most minor crimes as felonies, or, alternatively, to define them as "serious" or "violent" offenses, would be insulated from Eighth Amendment review. *Cf. Rummel*, 445 U.S. at 274 n.11 & 282 n.27 (noting that "whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility, these are peculiarly questions of legislative policy," but nonetheless agreeing with the dissent that the proportionality principle might apply "if a legislature made overtime parking a felony punishable by life imprisonment") (internal quotation marks and alterations omitted).

U.S. at 292; *see Graham*, 130 S. Ct. at 2039-40 (opinion of Roberts, C.J.); *see also Taylor*, 460 F.3d at 1095 n. 6.

**[11]** To determine the gravity of an offense, we must "look beyond the label of the crime" to examine the "factual specifics" of the offense. *Reyes*, 399 F.3d at 969; *see Ramirez*, 365 F.3d at 768 (analyzing the "core conduct" of the petitioner's offenses). For example, in *Ramirez*, even though the petitioner was twice convicted of robbery "by force"—defined by statute as "serious" felonies—we "minimized the gravity of the offenses" because their commission resulted in only "minor injury." *Reyes*, 399 F.3d at 969. *Ramirez* thus instructs courts to look past the statutory classification of a crime to consider whether the crime involved the use of force, the degree of force used, whether weapons were used in connection with the crime, and whether the crime otherwise " 'threaten[ed] to cause grave harm to society.' " *Ramirez*, 365 F.3d at 768-79 (quoting *Harmelin*, 501 U.S. at 1003) (opinion of Kennedy, J.)).

Norris's most recent offense, first-degree child molestation, is a class A felony punishable by up to life imprisonment with the possibility of parole. *See* Wash. Rev. Code §§ 9A.44.083; 9A.20.021; 9.94A.728. Additionally, because of Norris's criminal history and the statutory "seriousness level" of his offense, even if his offense had not been his second strike and he thus had not been sentenced pursuant to the POAA, Norris would have been subject under Washington's sentencing guidelines to a term of imprisonment between 98 and 130 months. *See id.* at §§ 9.94A.515; 9.94A.510. Nonetheless, Norris argues that his conduct was not "so serious" as to justify a life-without-parole sentence because it involved only a momentary touching of a young child between the legs on the outside of her clothing—"represent[ing] perhaps the most minimal conduct which could possibly have satisfied the statute"—and, according to Norris involved neither violence nor the threat of it. The State disputes Norris's description of his conduct as *de minimis*, arguing that it involved "a pur-

poseful touch with the purpose of sexual gratification," and was done "under the very eyes of the parent, in a public restaurant frequent[ed] by children, indicat[ing] a severe lack of impulse control." The State also notes that child molestation is a crime against a person and therefore inherently involves a degree of force.

**[12]** The factual specifics of Norris's offense involved him touching a five-year-old girl on her "privates" or "genitalia" and over her clothing for at most "a couple of seconds." While the absolute magnitude of this conduct may be less severe relative to the conduct of some first-degree child molesters, *see, e.g.*, *State v. Flores*, 56 P.3d 622, 623 (Wash. App. 2002) (touching or rubbing a young child multiple times); *Gimarelli*, 20 P.3d at 432 (repeatedly and forcibly stroking a young child), Norris's offense is undisputably not "one of the most passive crimes a person can commit," like the utterance of a $100 "no account" check in *Solem,* 463 U.S. at 296, or the nonviolent petty theft of a $199 VCR in *Ramirez*, 365 F.3d at 768. Nor does Norris's offense conduct amount to an "entirely passive, harmless, and technical violation" of a regulatory offense like the offender's failure to timely update his sex offender registration in *Gonzalez*. 551 F.3d at 886. Norris committed an offense against a person rather than property, *see Solem*, 463 U.S. at 293 (noting that criminal law is more protective of people than property), and against a five-year-old child rather than an adult. In fact, although we are certainly not ruling out such a decision in the future (especially where there is no recidivism component of the defendant's sentence), we are aware of no case in which a court has found a defendant's term-of-years sentence for a non-homicide crime *against a person* to be grossly disproportionate to his or her crime.[19] In addition, while Norris attempts

---

[19]The Supreme Court has struck down terms-of-years sentences for non-homicide crimes against a person as constitutionally excessive where the challenge is to "a particular type of sentence as it applies to an entire class of offenders who have committed a range of crimes," not a particular

to downplay his culpability by labeling his conduct "*de minimis*," it nonetheless comprised a completed crime, not merely an attempted one.[20] *See id.* (noting that attempts are generally recognized as less serious relative to completed crimes). Moreover, the circumstances surrounding Norris's most recent offense include his entering a playroom inside a McDonald's alone after drinking alcohol and interacting with a stranger's children, in the presence of the children's parents, despite having been convicted previously of first-degree child molestation. As the state courts reasonably determined, this behavior exhibits a lack of impulse control and so supports the conclusion that Norris cannot be trusted to refrain from similar behavior in the future.[21]

defendant's sentence. *See Graham* 130 S. Ct. at 2022-23 (striking down life-without-parole sentences for non-homicide crimes committed by juveniles); *see id.* at 2021 ("The [Supreme] Court's cases addressing the proportionality of sentences fall within two general classifications. The first involves challenges to the length of term-of-years sentences given all the circumstances in a particular case. The second comprises cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty."). Norris does not argue that life-without-parole sentences for recidivist sex offenders is categorically barred by the Eighth Amendment.

[20]Norris's attempt to downplay the severity of his offense by attacking his conviction is similarly unavailing. Although Norris is correct that "in those cases in which the evidence shows touching through clothing, . . . [Washington] courts . . . require[ ] . . . additional evidence of sexual gratification," *State v. Powell*, 816 P.2d 86, 88 (Wash. App. 1992), Washington courts are not required "to instruct the jury that it must find additional evidence of sexual gratification in order to find the defendant guilty of child molestation." *State v. Veliz*, 888 P.2d 189, 191 (Wash. App. 1995). In this appeal, therefore, we must accept the jury's decision to convict Norris as encompassing a finding that Norris had the requisite gratification purpose when he touched C.D.

[21]We do not second-guess the state courts' determination that Norris's behavior exhibited a severe lack of impulse control, as Norris does not challenge it on appeal. *See* 28 U.S.C. § 2254(e)(1) (providing that "a determination of a factual issue made by a State court shall be presumed to be correct," and that this presumption may be rebutted only by "clear and convincing evidence"); *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004) ("[I]n those cases where [the] petitioner does not raise an intrinsic challenge to the facts as found by the state court[,] the state court's findings are dressed in a presumption of correctness[.]").

**[13]** Furthermore, "[t]he impact of [child molestation] on the lives of [its] victims is extraordinarily severe." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 508 (9th Cir. 1994); *see Stogner v. California*, 539 U.S. 607, 651 (2003) (Kennedy, J., dissenting) ("When a child molester commits his offense, he is well aware the harm will plague the victim for a lifetime."). Indeed, while "psychological or physical harm is necessary to constitute 'abuse.' " *United States v. Baza-Martinez*, 464 F.3d 1010, 1017 (9th Cir. 2006), "[t]he use of young children [by adults] for the gratification of sexual desires constitutes an abuse. . . . It constitutes maltreatment, no matter its form." *United States v. Baron-Medina*, 187 F.3d 1144, 1147 (9th Cir. 1999); *see, e.g.*, *United States v. Valencia-Barragan*, 600 F.3d 1132, 1136 (9th Cir. 2010). "[W]e and our sister circuits have [therefore] consistently held that sexual offenses [by older adults] against younger children constitute 'crimes of violence.' " *United States v. Medina-Villa*, 567 F.3d 507, 515 (9th Cir. 2009).

Moreover, and critically, the question in this case is not whether Norris's most recent first-degree child molestation offense would by itself justify the harsh sentence he received. Because Norris was sentenced as a recidivist under the two strikes law, "in weighing the gravity of [his] offense, we must place on the scales not only his current felony," but also his criminal history. *Ewing*, 538 U.S. at 29 (plurality opinion); *see, e.g.*, *Graham*, 130 S. Ct. at 2037-38 (opinion of Roberts, C.J.).

Norris's previous armed robbery and second-degree theft offenses are of limited probative value for present purposes. Those offenses are unrelated to the conduct for which Norris was sentenced as a repeat offender and are not rationally related to Washington's interest in deterring sex offender recidivism. *Cf. Gonzalez*, 551 F.3d at 889-90 (determining that a California three strikes sentence of 25 years to life for failure to update the defendant's annual sex offender registration did not rationally relate to California's interest in deter-

ring recidivism where "the triggering offense [wa]s remote from . . . the current offense and the current offense reveal[ed] no tendency to commit additional offenses that pose[d] a threat to public safety").

**[14]** The circumstances under which Norris committed his previous first-degree child molestation offense are not sufficiently developed in the record for us to determine the gravity of that offense.[22] *See, e.g.*, *Reyes*, 399 F.3d at 969. But even assuming that Norris's previous offense involved the least offensive conduct that could support a conviction under the child molestation statute, that offense, like the criminal histories in *Rummel*, *Ewing*, and *Andrade*, is "directly related to [his] triggering offense, evincing a clear pattern of recidivism." *Gonzalez*, 551 F.3d at 890-91. Therefore, unlike in *Gonzalez*, Norris's most recent first-degree child molestation offense is not "categorically different from his past criminal conduct and does . . . demonstrate a[ ] recidivist tendency toward . . . sex offenses." *Id.* at 891.

When the Washington Legislature enacted the two strikes law, it determined that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent sex offense. *See Morin*, 995 P.2d at 117. "Recidivism has long been recognized as a legitimate basis for increased punishment," *Ewing*, 538 U.S. at 25 (plurality opinion), and Washington's penological justifications of deterrence and incapacitation are no pretext, *see id.* at 26-27 ("We have long viewed both incapacitation and deterrence as rationales for recidivism statutes[.]"). *See Graham*, 130 S. Ct. at 2029. There is no dispute that " '[s]ex offenders are a serious threat in this Nation.' " *Connecticut*

---

[22]At the sentencing hearing for Norris's most recent offense, the prosecutor stated, with respect to the 1991 child molestation conviction, that "had [Norris] been convicted on the facts presented[,] [the offense] would have been a child rape." Because there is no way to confirm the veracity of this statement, we do not rely on it.

*Dep't of Public Safety v. Doe*, 538 U.S. 1, 4 (2003) (quoting *McKune v. Lile*, 536 U.S. 24, 32 (2002)). Additionally, though Norris labels his previous child molestation offense, which occurred ten years before his most recent one, "old," "[e]mpirical research on child molesters . . . has shown that, '[c]ontrary to conventional wisdom, most reoffenses do not occur within the first several years after release,' but may occur 'as late as 20 years following release.' " *Smith v. Doe*, 538 U.S. 84, 104 (2003) (quoting National Institute of Justice, R. Prentky, R. Knight, & A. Lee, U.S. Dept. of Justice, Child Sexual Molestation: Research Issues 14 (1997)). Furthermore, " 'when convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault.' " *Connecticut Dep't of Public Safety* , 538 U.S. at 4 (quoting *McKune*, 536 U.S. at 33). The Washington Legislature therefore had a "reasonable basis for believing that dramatically enhanced sentences for habitual [sex offenders who commit at least two serious or violent sex offenses] 'advance the goals of [its] criminal justice system . . . .' " *Ewing*, 538 U.S. at 28 (plurality opinion) (first alteration omitted) (quoting *Solem*, 463 U.S. at 297 n.22); *see Graham*, 130 S. Ct. at 2028 ("Criminal punishment can have different goals, and choosing among them is within a legislature's discretion."); *Harmelin*, 501 U.S. at 1006-07 (opinion of Kennedy, J.).

To be sure, as we previously discussed, Norris's sentence of life imprisonment without the possibility of parole is harsh and forsakes any rehabilitative ideal. "By denying [Norris] the right to reenter the community, [Washington has] ma[de] an irrevocable judgment about [his] value and place in society." *Graham*, 130 S. Ct. at 2030. But regardless whether we agree with the propriety of this judgment,[23] we cannot conclude that

---

[23]It is unclear whether determinate recidivist sentencing schemes have any appreciable effect in decreasing crime, *see* California Legislative Analyst's Office, A Primer: Three Strikes — The Impact After More Than a Decade (Oct. 2005), http://www.lao.ca.gov/2005/3_strikes/3_strikes_

it is constitutionally infirm in light of the gravity of Norris's offense and criminal history. Norris's sentence "reflects a rational legislative judgment, entitled to deference," *Ewing*, 538 U.S. at 30 (plurality opinion), that sex offenders who have committed a serious or violent sex offenses and who continue to commit such sex offenses must be permanently incapacitated. Norris's thus is not " 'the rare case in which a threshold comparison of the crime committed and the sentences imposed leads to an inference of gross disproportionality,' " *Harmelin*, 501 U.S. at 1005 (opinion of Kennedy, J.), and we need go no further.

### III.

**[15]** We conclude that Norris's sentence is not grossly disproportionate to his crime and so does not violate the Eighth Amendment's prohibition against cruel and unusual punishment. Thus, regardless whether the Washington Court of Appeals's failure to weigh the severity of Norris's sentence in determining whether it was grossly disproportionate to the offenses he committed was an objectively unreasonable application of the gross disproportionality principle as established by the Supreme Court, we must affirm the district court's denial of Norris's petition for a writ of habeas corpus.

**AFFIRMED.**

---

102005.htm, or whether they promote a retributive penological goal, *see* Michael Vitiello, *Three Strikes: Can We Return to Rationality?*, 87 J. CRIM. L. & C. 395, 427 (1997). Additionally, many commentators have suggested that recidivist sentencing schemes are influenced in large part by political pressure to appear "tough on crime" rather than legitimate penological justifications. *See, e.g.*, Pamela S. Karlan, *"Pricking the Line": The Due Process Clause, Punitive Damages, and Criminal Punishment*, 88 MN. L. REV. 880, 890 (2004); Nancy J. King & Susan R. Klein, Essential Elements, 54 VAND. L. REV. 1467, 1488 (2001). In any event, "criticism [regarding the wisdom, cost-efficiency, and effectiveness" of recidivist sentencing schemes] is appropriately directed at the legislature, which has primary responsibility for making the difficult policy choices that underlie any criminal sentencing scheme." *Ewing*, 538 U.S. at 28.