BY ORDER OF THE COURT:
Order Clarifying Status of Original Opinion
This court previously affirmed this case with a reported decision. Arrington v. State, 27 So.3d 800 (Fla. 2d DCA 2010). Before the end of our term of court in 2010, we issued an order withdrawing mandate. At that time, we did not withdraw the published opinion. With this order we issue a revised opinion. The revision does not affect our earlier affirmance of the judgment of conviction. It reverses the sentence and remands for further proceedings. To reflect fully the history of this case, we have chosen not to withdraw the earlier published opinion, but rather to supplement that opinion with the new opinion.
OPINION AFTER WITHDRAWAL OF MANDATE
ALTENBERND, Judge.
This court previously affirmed this case with a reported decision. Arrington v. State, 27 So.3d 800 (Fla. 2d DCA 2010). As reflected in that ruling, we issued our decision knowing that Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), was pending in the U.S. Supreme Court. The Supreme Court decided Graham during the same term of court in which we issued our decision in Arring-ton. Before the term ended, we withdrew our mandate to allow the parties to further brief this case. Meanwhile, a comparable issue has arisen in another case before this court. Washington v. State, 110 So.3d 1 (Fla. 2d DCA 2012). We have not consolidated these cases, but we are releasing the opinions simultaneously.[1]
The issue presented by these cases probably applies to only a very small group of defendants who were juveniles at the time of their offenses. They are each serving a mandatory sentence of life without possibility of parole for a felony-murder conviction where, from the evidence or the jury’s verdict, it is clear that someone else actually committed the murder. The narrow issue presented by these cases is whether a statute may be unconstitutional as applied if it requires the court to impose a mandatory, nondiscretionary sentence of *22 life without possibility of parole for every juvenile convicted in this context. See §§ 782.04(l)(a)(2), 782.04(l)(b), 775.082(1), 775.082(2), Fla. Stat. (2006); § 921.002(l)(e), Fla. Stat. (2003) (abolishing parole in Florida).
We conclude that such a felony murder is not a “nonhomicide” offense for purposes of the categorical rule announced in Graham. On the other hand, it is a type of murder in which the finder of fact is not required to determine that the defendant intended to kill. Under the more common “all of the circumstances” approach to the Eighth Amendment and to its state counterpart, article I, section 17, of the Florida Constitution, we conclude that the reasoning in Graham logically requires a trial court to have some discretion when imposing life without possibility of parole under these circumstances. We emphasize that we are not holding any statute unconstitutional at this stage. We hold that in felony murder cases where the juvenile defendant did not actually commit the murder, the trial court must be permitted to engage in a case-specific analysis to determine whether the sentencing statute is unconstitutional as applied to the particular defendant. Accordingly, we reverse the sentence in this case and remand for re-sentencing at a hearing during which the trial court shall consider additional evidence as appropriate in exercising its discretion to determine whether a sentence of life without possibility of parole would be disproportionate in this case and whether a lesser sentence should be imposed.[2]
We will not repeat the full statement of the facts from our prior decision. In essence, Mr. Arrington was barely fifteen when he provided a handgun that a coper-petrator used during a robbery. It is undisputed in this case that Mr. Arrington did not fire the weapon. The robbery itself appears to have been a crime of opportunity with little premeditation during which Mr. Arrington’s coperpetrator suddenly shot and killed a man who came to the aid of the robbery victim.
Prior to the decision in Graham, we concluded that Mr. Arrington’s life-without-parole sentence was permissible under existing law. Graham now places this case in a somewhat different posture. In Graham, the Supreme Court recognized a categorical rule: the Constitution forbids a life sentence without parole for a juvenile “who did not commit homicide.” Graham, 130 S.Ct. at 2030. In reaching our decision in this case, we initially considered the possibility that such a felony murder was a “nonhomicide” crime.
Nothing in the Graham opinion indicates that the justices considered the question of whether a juvenile who is a principal to a homicide or is merely a participant in a felony murder should be treated as if the offense were a “nonhomicide” offense.[3] *23 From the perspective of the juvenile defendant, the crime does not involve a mens rea or intent to commit a murder. The criminal intent in these cases is more similar to that required for manslaughter. On the other hand, from the perspective of the victim and the victim’s family, felony murder is a homicide offense.
Other courts have declined to apply the categorical analysis of Graham to felony murder. See, e.g., Bell v. State, 2011 Ark. 379 (Ark.2011); Jackson v. Norris, 2011 Ark. 49 (Ark.2011), cert. granted, Jackson v. Hobbs, — U.S. —, 132 S.Ct. 548, 181 L.Ed.2d 395 (2011); People v. Adderley, No. B217620, 2011 WL 817751 (Cal.Ct.App.2d Dist. Mar. 10, 2011) (unpublished); People v. Hernandez, No. B223310, 2011 WL 539448 (Cal.Ct.App.2d Dist. Feb. 17, 2011) (unpublished); Jensen v. Zavaras, Civil Action No. 08-cv-01670-RPM, 2010 WL 2825666 (D.Colo. July 16, 2010).[4] Like these other states, we are unconvinced that a categorical rule, which would apply without regard to the circumstances of the offense, is appropriate in this context.[5]
But a rejection of Graham’s categorical approach to Eighth Amendment analysis does not end our task. The Eighth Amendment “prohibits not only barbaric punishments,” Solem v. Helm, 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), but also “extreme sentences that are ‘grossly disproportionate’ to the crime,” Ewing v. California, 538 U.S. 11, 23, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (quoting Harmelin, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (Kennedy, J., concurring in part and concurring in the judgment)). It is well established that this “narrow proportionality principle ... applies to noncapital sentences.” Ewing, 538 U.S. at 20, 123 S.Ct. 1179 (quoting Harmelin, 501 U.S. at 996-97, 111 S.Ct. 2680 (Kennedy, J., concurring in part and concurring in judgment)). Thus, the Eighth Amendment can justify an analysis of “all of the circumstances,” Graham, 130 S.Ct. at 2021, to determine whether a particular sentence for a specific offense is cruel and unusual.
The methodology used to evaluate all of the circumstances in a noncapital case has been a disputed issue, which Graham seems to have resolved. See Norris v. Morgan, 622 F.3d 1276, 1286-87 (9th Cir.2010). In Graham, the Supreme Court adopted the three-factor approach established by Justice Kennedy in his Harmelin concurrence.
A court must begin by comparing the gravity of the offense and the severity of the sentence.... “[I]n the rare case in which [this] threshold comparison ... leads to an inference of gross dispropor-tionality” the court should then compare the defendant’s sentence with the sentences received by other offenders in the *24 same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.... If this comparative analysis “validates an initial judgment that [the] sentence is grossly disproportionate,” the sentence is cruel and unusual.
Graham, 130 S.Ct. at 2022 (quoting Harmelin, 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy, J. concurring in part and concurring in judgment)).
This three-factor approach appears to be designed for application by a trial court. We apply an analogous approach in this opinion not to determine the merits of the issue in Mr. Arrington’s case, which would seem to be a mixed question of fact and law for which our record would be inadequate, but to determine whether the general circumstances surrounding comparable felony murders involving juveniles are such that the trial court should embark on a proportionality review to assure that the relevant laws are constitutional as applied. Our discussion of the second and third prongs of this test will likely control those factors in the trial court, but the “gravity of the offense” surely requires a case-specific determination.
I. Preliminary Considerations
Before deciding to embark on this proportionality analysis, this court considered several factors that seem to suggest that life without possibility of parole could be cruel and unusual in this relatively rare context. First, some of the policies and discussion in Graham that led to the categorical approach in a nonhomicide case seem to weigh against a mandatory, nondiscretionary sentence of life without possibility of parole in this context. The Supreme Court acknowledged that “[ejmbodied in the Constitution’s ban on cruel and unusual punishments is the ‘precept of justice that punishment for crime should be graduated and proportioned to [the] offense.’ ” Graham, 130 S.Ct. at 2021 (quoting Weems v. United States, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910)). The Court then noted that it has “recognized that defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers.” Graham, 130 S.Ct. at 2027. At least some juveniles convicted of felony murder did not kill and did not intend to kill. Foreseeability is a more complex issue, but it is reasonable to conclude that some juveniles involved as principals to murder or in felony murders did not foresee that a death was a possible outcome of their conduct.
Next, we were influenced by the law applicable to adults who commit felony murder. The Supreme Court does not permit adults convicted of similar felony murders to receive the death penalty. It reserves that sentence for persons who actually committed the murder or who significantly participated in the underlying felony with reckless disregard for human life. See Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). As the Supreme Court explained:
The question before us is not the dispro-portionality of death as a penalty for murder, but rather the validity of capital punishment for Enmund’s own conduct. The focus must be on his culpability, not on that of those who committed the robbery and shot the victims, for we insist on “individualized consideration as a constitutional requirement in imposing the death sentence,” Lockett v. Ohio, 438 U.S. 586, 605, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (footnote omitted), which means that we must focus on “relevant *25 facets of the character and record of the individual offender.” Woodson v. North Carolina, 428 U.S. 280, 804, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).
Enmund, 458 U.S. at 798, 102 S.Ct. 3368 (emphasis original). Likewise in this case, if we focus on Mr. Arrington’s own conduct and his culpability, it is surely of a lesser degree than if he himself had intentionally pulled the trigger and killed this man. Given that life without possibility of parole is the greatest sentence he could receive for a premeditated murder, it seems potentially “disproportionate” that Florida law mandates the same nondiscretionary sentence for a felony murder without any consideration of the circumstances of the offense.
Finally, we were influenced by the legal process in Florida that determines whether such a juvenile receives life without possibility of parole or some lesser sanction. Mr. Arrington’s harsh sentence is mandatory exclusively because of his indictment by a grand jury. See §§ 985.56, .565, Fla. Stat. (2006). If the charge had been filed by information, the trial court would have had alternative sentencing options. See § 985.565(4). Obviously, even less harsh options would have been available if the case had been left in juvenile court.
Nothing in Florida law requires the grand jury to be informed that their indictment will lead to this mandatory sentence. The law does not require the grand jurors to opt to indict a juvenile for felony murder only when the penalty available by information would be insufficient. As a result, whether the penalty will be life without possibility of parole or some lesser sentence is, to a large degree, determined when the prosecutor decides how to file the case — with or without a grand jury.
These factors indicated to us that a full consideration of this penalty for this crime under the Eighth Amendment is warranted.
II. Proportionality Analysis
A. The gravity of the offense compared to the severity of the sentence
As this prong is described by Justice Kennedy in Harmelin, we believe that it is more appropriately a case-specific matter for consideration by the trial court. Our job is merely to determine whether the general elements of the offense are such that a trial court could find that life without possibility of parole is cruel and unusual in a particular case. Because of the minimal mens rea required for this type of felony murder, it is very hard to generalize about the gravity of the offense. The offense may be committed by a twelve-year old who is given five dollars to be the lookout for his father who shoots and kills a customer during a robbery of a convenience store. But it may also be committed by a teenager a day shy of her eighteenth birthday who fully plans a robbery, obtains the murder weapon, and then convinces her boyfriend to carry the weapon and shoot anyone who gets in their way. This is simply not a crime with a uniform “gravity” that would cause this court to conclude that the sentence of life without possibility of parole would be constitutional as applied in every case. At the general level, this is one of those “rare cases” described in Harmelin where the threshold comparison leads to an inference that the mandated sentence could sometimes be grossly disproportionate.
B. A comparison of the sentence mandated for juveniles involved in felony murders with the sentences received by other offenders in Florida
Our comparison of the mandatory life-without-parole sentence imposed on defendants like Mr. Arrington with sentences *26 received by other defendants in Florida validates our initial judgment that the mandatory sentencing scheme as applied to juveniles convicted as principals to felony murder may lead to grossly disproportionate sentences in some cases. As stated previously, life without possibility of parole is the harshest sentence that may be imposed on a juvenile in the State of Florida for a homicide crime, and Florida’s sentencing scheme mandates this sentence for every juvenile tried as an adult and convicted of felony murder, even when the juvenile did not actually commit the homicide. Because the trial court has no discretion to determine a proportionate sentence in this circumstance, a mature seventeen-year-old who actively plans and commits premeditated murder is subject to the same penalty as a defendant like Mr. Arrington, who was barely fifteen at the time of the crime and who barely had time to think through his actions.[6]
Moreover, after Graham, juveniles who consciously plan and participate in particularly heinous crimes that do not result in homicide, such as armed kidnapping, armed home invasion, sexual battery, or armed robbery, are subject to a sentence no greater than life with the possibility of parole.[7] Because Florida’s mandatory sentencing scheme for felony murder may result in a harsher sentence for a juvenile who is individually less culpable than for a juvenile who, with cold and calculated premeditation, played a significant role in a more heinous, atrocious, or cruel crime, our comparison of Florida sentences confirms that the statutorily mandated life-without-parole sentence for felony murder may lead to grossly disproportionate sentences in some cases.
C. A comparison of Florida’s mandated sentence with the sentences imposed for the same crime in other jurisdictions
Our comparison of Mr. Arrington’s mandatory life-without-possibility-of-parole sentence with sentences imposed for the crime of principal to felony murder in the three largest states and the states bordering Florida further validates our initial judgment that Florida’s mandatory sentencing scheme as applied to juveniles convicted as principals to felony murder may lead to grossly disproportionate sentences. In California, the largest state in the union, a trial court has discretion to sentence a sixteen- to seventeen-year-old juvenile convicted as a principal to felony murder to life in prison without parole or to a term of imprisonment from twenty-five years to life. §§ 189, 190.2, 190.5, 1170.17, 1170.19, Cal.Penal Code (2011). Texas, with its reputation for being “tough on crime,” recently abolished life-without-parole sentences for juveniles convicted of any crime, including felony murder, which Texas classifies as a capital offense. § 54.02 Tex. Family Code (2009); § 12.31(a)(1), Tex. Penal Code (2009); § 19.03(a)(2), Tex. Penal Code (2011). In New York, a juvenile convicted as a principal to felony murder will be sentenced to life in prison with the possibility of parole. §§ 125.25, 70.00(2), 70.05(2)(a), 70.40(l)(a)(i), McKinney’s Con-sol. Laws of N.Y. Ann. (2011). None of the states with populations comparable to that of Florida mandate life in prison with *27 out parole for a juvenile convicted of felony murder.
In neighboring Georgia, the trial court has discretion to sentence a juvenile convicted as a principal to felony murder to life in prison without parole or life with the possibility of parole. §§ 16-5-l(c), 16-5 — 1(d), 15-11-30.2, 42-9 Ga.Code (2011). Of the two states that border Florida, only Alabama mandates that a juvenile like Mr. Arrington be sentenced to life in prison without parole. §§ 13A-6-2(a)(8), 13A-6-2(c), 12-15-203, Ala.Code (2011). Significantly, the Supreme Court recently granted certiorari to consider whether Alabama’s mandatory life-without-parole sentence for capital murder is cruel and unusual as applied to young offenders. See Miller v. State, 63 So.3d 676 (Ala.Crim.App.2010), cert. granted, Miller v. Alabama, — U.S. —, 132 S.Ct. 548, 181 L.Ed.2d 395 (2011). Our review demonstrates that most states comparable in size to Florida and at least one state bordering Florida allow the trial court discretion to determine whether sentencing a juvenile convicted of felony murder to life in prison without parole is appropriate under the circumstances, which further validates our conclusion.[8]
III. Conclusion
We therefore hold that Florida’s statutorily mandated life-without-parole sentence for juveniles convicted of felony murder when they were not the actual killer raises a sufficient risk of a cruel and unusual sentence that trial courts must consider whether such a sentence is proportionate given the circumstances of the juvenile’s crime. It is extremely rare for any punishment measured by a term of years and designated by the legislature to be declared cruel and unusual.
We do not conclude that such a narrow proportionality principle prohibits the imposition of a sentence of life without possibility of parolé for every juvenile involved in such a felony murder. But just as we cannot prohibit a sentence of life without possibility of parole in all such cases, we are unconvinced that the legislature can compel such a sentence in all felony-murder cases involving juveniles who did not commit the fatal act without regard to the circumstances of the case. In order to prohibit sentences that are grossly disproportionate in this specific context, we conclude that the trial court must have the authority to consider all of the circumstances and to impose a proportionate sentence. If the circumstances of the felony murder establish that a sentence of life without possibility of parole is not disproportionate, the court must impose that sentence. But it must also have discretion to impose a lesser sentence when life without possibility of parole would be disproportionate to the circumstances of the crime.
In so ruling, we have not overlooked the fact that requirements for individualized sentencing in noncapital cases have not been mandated under the Eighth Amendment for other sentencing issues. See Harmelin, 501 U.S. at 1006, 111 S.Ct. 2680. We do not envision that the legislature’s prerogative to require the imposition of mandatory sentences in virtually any other context could be similarly limited. However, in the very limited context of sentencing juveniles, some who may not yet be teenagers and some who may almost be adults, whose involvement in the *28 murder, as compared to the underlying felony, may be minimal or quite substantial, and for whom life without possibility of parole is the most severe available punishment, we conclude that the trial court must have an element of discretion to prevent sentences that would otherwise be cruel and unusual.
Reversed and remanded.
NORTHCUTT, J., and CASE, JAMES R., Associate Senior Judge, Concur.

. We have intentionally delayed our decision in this case in order to have the advantage of decisions issued in response to Graham. It is clear that the affected defendants will receive long prison terms even if they ultimately receive a sentence less than life without possibility of parole and that they will not be prejudiced by the delay.

. We note that we are not the first court to hold such a mandatory sentencing scheme unconstitutional as applied to juveniles. Before Graham and in a more reaching opinion, the Supreme Court of Illinois held a similar sentencing scheme unconstitutional under the Illinois Constitution to the extent that the statutory scheme did not allow the trial court discretion to determine whether a sentence of life imprisonment without parole was proportionate in light of the circumstances, i.e., the juvenile was convicted of multiple murders on an "accountability” theory. See People v. Miller, 202 Ill.2d 328, 269 Ill.Dec. 503, 781 N.E.2d 300 (2002). See also Brian R. Gallini, Equal Sentences for Unequal Participation: Should the Eighth Amendment Allow All Juvenile Murder Accomplices to Receive Life Without Parole?, 87 Or. L. Rev. 29 (2008).

. In reaching its decision, the Supreme Court relied on a study of Florida cases that classified felony murder as a homicide offense. See Graham, 130 S.Ct. at 2023 (citing Paolo G. Annino, David W. Rasmussen, & Chelsea Boehme Rice, Juvenile Life without Parole for *23 Non-Homicide Offenses: Florida Compared to Nation 4 (Sept. 14, 2009)). We hesitate to read too much into this circumstance.

. However, Colorado currently imposes a sentence of life with the possibility of parole after forty years for juveniles convicted in this context. § 18 — 1.3—401(b), Colo.Rev.Stat. (2010).

. Despite our conclusion in this regard, it is noteworthy that the Missouri Supreme Court rejected the categorical approach for a juvenile who committed premeditated first-degree murder of a police officer. See State v. Andrews, 329 S.W.3d 369 (Mo.2010), cert. denied, Andrews v. Missouri, — U.S. —, 132 S.Ct. 260, 181 L.Ed.2d 151 (2011). In the lengthy opinion in which the court split four to three, Justice Wolff’s dissent presents a strong argument for the proposition that life without possibility of parole should be categorically unconstitutional even for premeditated murder by a juvenile. Id. at 379-89. His arguments would apply with greater strength in the context of this case.

. §§ 782.04(l)(a)(l), 782.04(2), 775.082(1), 775.082(2), Fla. Stat. (2006).

. §§ 787.01(l)(a), 812.135(1), 812.135(2)(a), 794.01 l(2)(b), 794.011(3), 812.13(2)(a), 812.13(2)(b), 775.082(3)(a)(3), 775.082(3)(b), Fla. Stat. (2011); Graham, 130 S.Ct. 2011 (holding that juveniles convicted of nonhomi-cide crimes may not be sentenced to life in prison without parole).

. The parties did not provide this court with any extensive survey of the law of other states. Our research has shown that it is very difficult for a Florida-trained lawyer to determine the maximum sentence that other jurisdictions impose on juveniles in this specific context. Accordingly, this court did not conduct a full fifty-state review.