Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/23/2016 09:09 AM CST

State of Nebraska, appellee, v.
Douglas M. Mantich, appellant.
___ N.W.2d ___

Filed December 23, 2016.    No. S-16-221.

1. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
3. **Constitutional Law: Minors: Sentences.** Life imprisonment without the possibility of parole for juveniles convicted of nonhomicide offenses is unconstitutional; such juvenile offenders must be given some meaningful opportunity for relief based on demonstrated maturity and rehabilitation.
4. **Constitutional Law: Homicide: Minors: Sentences.** There is no categorical bar against life sentences without parole for juveniles convicted of homicide offenses; however, the sentencing court must consider specific, individualized factors before handing down a sentence of life imprisonment without parole for a juvenile.
5. **Homicide: Sentences.** Felony murder is a homicide offense, and there is no bar against sentences of life without parole.
6. **Constitutional Law: Criminal Law: Sentences.** The Eighth Amendment does not require strict proportionality between crime and sentence, but, rather, forbids only extreme sentences that are grossly disproportionate to the crime.

Appeal from the District Court for Douglas County: J Russell Derr, Judge. Affirmed.

Adam J. Sipple, of Johnson & Mock, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Heavican, C.J.

## INTRODUCTION

Douglas M. Mantich was convicted of first degree murder and use of a weapon to commit a felony. He was initially sentenced to life imprisonment on the murder conviction; he was later granted postconviction relief in the form of resentencing as a result of the U.S. Supreme Court's decision in *Miller v. Alabama.*[1] Following a hearing, Mantich was sentenced to 90 years' to 90 years' imprisonment on the first degree murder conviction. He appeals. We affirm.

## BACKGROUND

Mantich was convicted of first degree murder and use of a weapon to commit a felony in September 1994. The following factual recitation is from this court's 2014 opinion vacating Mantich's life sentence:

On December 5, 1993, a gathering was held to mourn the death of a "Lomas" gang member. Several members of the gang attended the party, including Mantich, Gary Brunzo, Daniel Eona, Juan Carrera, and Angel Huerta. At the gathering, Mantich consumed between 5 and 10 beers and smoked marijuana in a 2½-hour period.

Sometime after 1 a.m., Carrera decided that he wanted to steal a car and commit a driveby shooting of a member

---

[1] *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

of a rival gang. While holding a gun, Eona responded that he also wanted to steal a car and talked about "jackin' somebody" and "putting a gun to their head." Brunzo and Eona then walked toward Dodge Street to steal a vehicle. They returned about 20 minutes later in a stolen red minivan, and Carrera and Huerta got in. Over his girlfriend's objection and attempt to physically restrain him, Mantich also got into the van.

The van had no rear seats. Eona was in the driver's seat, and Brunzo was in the front passenger seat. Carrera sat behind the driver's seat; Huerta sat on the passenger side, close to the sliding side door; and Mantich sat behind Carrera and Huerta, toward the back of the van. After a short time, Mantich realized that a man, later identified as Henry Thompson, was in the van. Thompson was kneeling between the driver's seat and the front passenger seat with his hands over his head and his head facing the front of the van.

The gang members began chanting "Cuz" and "Blood." Mantich thought the purpose was to make Thompson believe they were affiliated with a different gang. Eona demanded Thompson's money, and Brunzo told Thompson they were going to shoot him. Mantich saw Brunzo and Eona poke Thompson in the head with their guns. Eventually, a shot was fired and Thompson was killed. Thompson's body was pulled out of the van and left on 13th Street.

The group then drove to Carrera's house so he could retrieve his gun. After this, they drove by a home and fired several shots at it from the vehicle. Later, they sank the van in the Missouri River and walked back to 13th Street. From there, Mantich and Huerta took all the guns and went to Huerta's house to hide them. Brunzo, Eona, and Carrera walked toward the area of Thompson's body.

After hiding the guns with Huerta, Mantich walked to Brian Dilly's house. While still intoxicated, Mantich told Dilly and Dilly's brothers about the events of the night. Mantich claimed he had pulled the trigger and killed Thompson. When the 6 o'clock news featured a story on the homicide, Mantich said, "'I told you so,'" and "'I told you I did it.'" About an hour after the newscast, Mantich told Dilly that Brunzo was actually the person who shot and killed Thompson. The police later learned about Mantich's conversations with Dilly, and arrest warrants were issued for Mantich, Brunzo, Eona, and Carrera. Mantich was arrested on January 4, 1994.

Mantich agreed to talk with Omaha police about what happened and initially claimed that Brunzo shot Thompson. The police told Mantich that statements were being obtained from Brunzo, Eona, and Carrera and that Mantich's statement was inconsistent with the information the police had acquired. The police also told Mantich that Dilly said Mantich confessed to shooting Thompson. Mantich admitted telling Dilly he shot Thompson, but explained that it was a lie and that he was only trying to look like "a bad ass." Mantich claimed that he had not shot anyone and that Brunzo was the shooter.

The police then told Mantich they knew what happened and assured Mantich that his family and girlfriend "would not abandon him" if he told the truth. At this point, Mantich admitted that he had pulled the trigger. Mantich said, "'I'm sorry it happened. I wished it wouldn't have happened.'" Mantich further stated, "'They handed me the gun and said shoot him, so I did it.'" Mantich again confessed during a taped statement to shooting Thompson.

Mantich testified in his own behalf at trial. He acknowledged his statements to Dilly and the police that he had shot Thompson, but told the jury that he had not shot Thompson. On September 26, 1994, the jury returned a

verdict of guilty on one charge of first degree murder and one charge of use of a firearm to commit a felony.[2]

Mantich was 15 years old at the time of the commission of the acts leading to his convictions. His murder conviction was based upon felony murder with the underlying felonies of kidnapping, robbery, or both. Mantich was sentenced to life imprisonment on the first degree murder conviction and 5 to 20 years' imprisonment on the use conviction. Mantich's convictions and sentences were affirmed on direct appeal.[3]

Mantich subsequently filed a motion for postconviction relief, which was granted by this court[4] following the U.S. Supreme Court's decision in *Miller*.[5] Mantich's life sentence for first degree murder was vacated and the cause was remanded for resentencing.

Upon resentencing, a hearing was held. At that hearing, Mantich offered evidence, including the deposition of a neuropsychologist who testified generally about adolescent brain development.

Mantich also offered the testimony of Charles Newring, a psychologist with experience assessing youth and adults involved in the court system. Newring testified that Mantich was of low risk for future acts of violence if his sobriety was maintained. Mantich was also assessed for psychopathy, which Newring testified was one of the best predictors of future violence. According to Newring, Mantich scored well below the "cut score" for psychopathy.

Newring also testified as to Mantich's prison misconduct record, noting that the last report involving violence was in 2000 and that it involved the group related to the offense for which Mantich was convicted. The record otherwise showed

[2] *State v. Mantich*, 287 Neb. 320, 322-24, 842 N.W.2d 716, 719-20 (2014).

[3] *State v. Mantich*, 249 Neb. 311, 543 N.W.2d 181 (1996).

[4] *State v. Mantich, supra* note 2.

[5] *Miller v. Alabama, supra* note 1.

that between January 1995 and June 2015, Mantich had 122 misconduct reports.

The record also showed that Mantich had successfully received a diploma through the GED program as well as other educational programming while he was in prison, but that he had not undergone substance abuse treatment. A correctional system employee testified that Mantich was a "model inmate," a "'leader,'"; that he followed the rules; and that he was one of seven inmates chosen to participate in a dog training program.

Following that hearing, Mantich was sentenced to 90 years' to 90 years' imprisonment. He appeals.

## ASSIGNMENTS OF ERROR

On appeal, Mantich assigns that the district court erred in (1) imposing a de facto life sentence prohibited by the Eighth Amendment; (2) imposing a sentence unconstitutionally disproportionate to his offense in light of Mantich's age, conduct, and subsequent reform; (3) failing to consider Mantich's youth in light of the principles and purposes of juvenile sentencing; and (4) violating his right to due process by failing to use adequate procedural safeguards to protect against arbitrary and capricious imposition of a sentence violating Mantich's substantive protection against cruel and unusual punishment.

## STANDARD OF REVIEW

[1,2] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[6] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[7]

---

[6] *State v. Cardeilhac*, 293 Neb. 200, 876 N.W.2d 876 (2016).

[7] *State v. Berney*, 288 Neb. 377, 847 N.W.2d 732 (2014).

## ANALYSIS

*Validity of Sentence Imposed.*

In his first and second assignments of error, Mantich assigns that the sentence imposed upon him on resentencing was erroneous. Mantich argues that he was a "child who did not kill," but that the district court sentenced him as though he was "an adult who took a life."[8] His argument, particularly when considered in the aggregate with his consecutive 5- to 20-year sentence of imprisonment for use of a weapon, is that his sentence for felony murder was a de facto life sentence without parole, was disproportionate to the crime for which he was convicted, and was erroneous.

[3,4] Some background with respect to juvenile sentencing is helpful. In *Graham v. Florida*,[9] the U.S. Supreme Court held that life imprisonment without the possibility of parole for juveniles convicted of nonhomicide offenses was unconstitutional. Specifically, the Court in *Graham* held such juvenile offenders must be given "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."[10] Several years later, in *Miller*,[11] the Court declined to extend that categorical bar of no life sentences without parole to juveniles convicted of homicide. This court noted in considering Mantich's[12] motion for postconviction relief that there was no bar to a life sentence, but that "a sentencer must consider specific, individualized factors before handing down a sentence of life imprisonment without parole for a juvenile."

[5] Mantich's argument that his sentence is unconstitutional is contingent upon two assumptions: (1) that a sentence of years can, under certain circumstances, be a de facto life

---

[8] Brief for appellant at 14.

[9] *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

[10] *Id.*, 560 U.S. at 75.

[11] *Miller v. Alabama, supra* note 1.

[12] *State v. Mantich, supra* note 2, 287 Neb. at 340, 842 N.W.2d at 730.

sentence and (2) that felony murder is a nonhomicide offense under *Graham*. We need not decide the validity of Mantich's de facto life sentence argument, however, because we disagree with the assertion that felony murder is a nonhomicide offense. Rather, we hold that felony murder is a homicide offense under *Miller* and note that there is no bar against sentences of life without parole.

Neb. Rev. Stat. § 28-303 (Reissue 1989) provided for the crime of first degree murder and set forth three different ways that it can be committed:

> A person commits murder in the first degree if he kills another person (1) purposely and with deliberate and premeditated malice, or (2) in the perpetration of or attempt to perpetrate any sexual assault in the first degree, arson, robbery, kidnapping, hijacking of any public or private means of transportation, or burglary, or (3) by administering poison or causing the same to be done . . . .

Subsection (2) provided that felony murder is first degree murder. A specific intent to kill is not required to constitute felony murder, only the intent to do the act which constitutes the felony in question.[13] We have held that premeditated murder and felony murder are but different ways to commit a single offense of first degree murder.[14] Thus, our statutory scheme plainly envisions felony murder as a homicide offense.

This result is consistent with other jurisdictions that have held that felony murder is a homicide offense to which *Graham* is inapplicable,[15] and it is also consistent with the holding in *Graham*.

---

[13] *State v. Aldaco*, 271 Neb. 160, 710 N.W.2d 101 (2006).

[14] *State v. Galindo*, 278 Neb. 599, 774 N.W.2d 190 (2009).

[15] *Graham v. Florida, supra* note 9. See *Arrington v. Florida*, 113 So. 3d 20 (Fla. App. 2012). See, also, *Trimble v. Trani*, No. 09-cv-01943-REB, 2011 WL 3426207 (D. Colo. Aug. 5, 2011) (unpublished opinion); *Jensen v. Zavaras*, No. 08-cv-01670-RPM, 2010 WL 2825666 (D. Colo. July 16, 2010) (unpublished opinion); *Bell v. Arkansas*, No. CR 10-1262, 2011 WL 4396975 (Ark. Sept. 22, 2011).

The Court in *Graham* held that the Eighth Amendment prohibited sentencing a juvenile to the maximum penalty of life imprisonment without parole for a nonhomicide offense committed by that juvenile.[16] But felony murder, regardless of which individual perpetrated the actual killing, results in the death of a victim. As the Court reasoned in *Graham*, nonhomicide offenses "differ from homicide crimes in a moral sense."[17] That felony murder results in death supports our conclusion that felony murder is a homicide offense.

Mantich suggests that felony murder should be considered a nonhomicide offense at least under circumstances where the defendant at issue was not directly responsible for the victim's death. He further argues that in his case, there was no jury finding that he was actually responsible for Henry Thompson's death.

Mantich is correct in that the jury did not find that he killed Thompson. But the jury was not asked to find that fact; it needed only to conclude that Mantich was guilty of the underlying felony during perpetration of the act during which Thompson was killed.

And in those cases where there might be evidence that the defendant being sentenced did not actually kill, the sentencing court may consider that mitigating factor when sentencing a juvenile defendant.[18] But this is not that case: There was evidence in the record that supported the conclusion that Mantich did, in fact, kill Thompson, including testimony that Mantich admitted to others that he had done so.

Unless and until the U.S. Supreme Court rules otherwise, we conclude the felony murder is a homicide offense for purposes of sentencing under *Miller* and *Graham*.[19] Because under *Miller* a juvenile defendant may be sentenced to

---

[16] *Graham v. Florida, supra* note 9.

[17] *Id*., 560 U.S. at 69.

[18] Neb. Rev. Stat. § 28-105.02 (Reissue 2016).

[19] *Miller v. Alabama, supra* note 1; *Graham v. Florida, supra* note 9.

life imprisonment without parole, it is immaterial whether the sentence imposed upon Mantich was a de facto life sentence.

[6] Nor was Mantich's sentence disproportionate. The Eighth Amendment does not require strict proportionality between crime and sentence, but, rather, forbids only extreme sentences that are "'grossly disproportionate'" to the crime.[20] In this case, while Mantich now denies that he shot the victim, he did make statements that admitted as much. There was evidence at trial to that effect, and the original sentencing court sentenced him based upon the court's belief that Mantich "'pulled the trigger.'" And in any case, Mantich was part of a group of gang members who carjacked and abducted an innocent person, drove around taunting that person, and put the person in fear for his life before the person was shot and thrown out of the moving vehicle into the street. On these facts, Mantich's sentence was not disproportionate.

Mantich's first and second assignments of error are without merit.

*Sentencing Hearing.*

In his third and fourth assignments of error, Mantich argues that the sentencing court failed to consider his youth or to use adequate procedural safeguards when sentencing him.

We turn first to Mantich's contention that the sentencing court did not give "conscientious 'consideration'" to his youth.[21] We find that assertion to be without merit. Rather, the district court explicitly noted Mantich's age and further explained that it was "one of the few mitigating factors in this case." The district court also noted that Mantich was receiving some benefit from his age insofar as he was being resentenced to a term of less than life imprisonment.

---

[20] *Ewing v. California*, 538 U.S. 11, 23, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003).

[21] Brief for appellant at 34.

As the facts of this case demonstrate, Mantich participated in the carjacking, abduction, and taunting of an innocent victim, who was shot in the back of the head, perhaps by Mantich himself. The victim was then pulled out of his own vehicle and left dead on the street. The fact that Mantich is unhappy with the sentence he received does not mean that the district court ignored Mantich's age or otherwise erred in imposing sentence. We have reviewed the record from the sentencing hearing and reject Mantich's claim that the district court did not adequately consider his age and other mitigating factors when sentencing him.

We turn next to Mantich's contention that his due process rights were violated when the district court failed to use adequate procedural safeguards.

Mantich asks this court to "establish procedural safeguards to ensure sentences imposed upon juvenile offenders do not exceed constitutional boundaries."[22] Specifically, Mantich asks us to include the requirement of a mitigation hearing, a presumption against life or de facto life sentences, and factfinding sufficient for meaningful appellate review. But we find that the procedural safeguards Mantich seeks either are already in place or are not required by the U.S. Supreme Court's decisions in *Miller* and *Graham*.[23]

Mantich first suggests that we establish a required mitigation hearing, but he fails to explain why the sentencing hearing that he, as well as every other criminal defendant, was already afforded is inadequate. Moreover, § 28-105.02 expressly allows a defendant to present mitigating factors to the court and mandates that the court consider such factors.

Mantich also seeks a presumption against sentences of life imprisonment and life imprisonment without parole. But *Miller*[24] allows such sentences for a homicide offense. The

---

[22] *Id*. at 35.

[23] *Miller v. Alabama, supra* note 1; *Graham v. Florida, supra* note 9.

[24] *Miller v. Alabama, supra* note 1.

presumption against such sentences is not required by the U.S. Supreme Court. The Legislature has not mandated such a presumption, and we will not create one. Nor is there language in *Miller*, nor anything more generally in our case law or in § 28-105.02, that would require specific factfinding at sentencing.[25]

We have reviewed the record and conclude that Mantich was sentenced in accordance with § 28-105.02 and *Miller*. The Legislature has set forth the sentencing procedure applicable to juveniles who have committed homicide offenses. That procedure is consistent with *Miller* and with the Eighth Amendment as it is currently interpreted by the U.S. Supreme Court. We therefore find Mantich's third and fourth assignments of error to be without merit.

## CONCLUSION

The sentence of the district court is affirmed.

AFFIRMED.

---

[25] See *State v. Hunt*, 214 Neb. 214, 333 N.W.2d 405 (1983).